UNITED STATES DISTRICT COURT                               b
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JEFFREY GIBSON | CIVIL ACTION NO. 1:15-CV-01230 |
| VERSUS | CHIEF JUDGE DRELL |
| WILLIAM EARL HILTON, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

I.   Procedural History

Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, *in forma pauperis*, by pro se plaintiff Jeffrey Gibson ("Gibson") (Docs. 1, 11). The remaining defendants are Warden Dauzat (warden of the Rapides Parish Detention Center ("RPDC") in Alexandria, Louisiana), Lt. Lavalais, Corporal Nichols, Deputy Gintz, Deputy Cummins, Corporal Mitchell, Deputy Snow, Deputy Bishop, and Deputy Turner (all employed at the RPDC) (Docs. 23, 24).

Gibson contends he was a pretrial detainee in Detention Center-I ("DC-I") and Detention Center-III ("DC-III") of the RPDC[1] in 2013-2014. Gibson's remaining causes of action[2] are for his conditions of confinement in lockdown (deprivation of exercise); being kept in lockdown more than 23 hours per day; and failure to protect Gibson from an assault and from having his food and commissary items stolen (Doc.

---

[1] The RPDC is comprised of three detention centers.

[2] A judgment previously entered in this case dismisses all of Gibson's claims except claims 5, 6, and 8 (Doc. 17).

17).  Gibson seeks general and punitive damages.  Gibson was convicted and released on probation in 2015, and is residing in North Carolina (Docs. 19 & 20).

Defendants answered the complaint (Doc. 25) and filed a motion for summary judgment (Doc. 44).[3]  Gibson did not file a response to Defendants' motion.

Defendants Sheriff William Earl Hilton, Deputy Fairbanks, Deputy Carmouche, Deputy Greene, Sgt. Brandly, Deputy Hunter, and Sgt. Dempsey were never served.  Gibson did not complete summonses for these defendants and no attempt was ever made to effect service.  Accordingly, the complaint against these defendants should be dismissed without prejudice under Fed.R.Civ.P. 4(m).  See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191 (1994); Systems Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988).

Defendants' motion for summary judgment is now before the Court for disposition.

II.  **Law and Analysis**

    A.  **Standards governing the Motion for Summary Judgment.**

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Paragraph (e) of Rule 56 also provides the following:

---

[3] Defendants' motion addresses some issues, including prescription, which have already been dismissed (Doc. 17).  Therefore, to the extent that Defendants' motion addresses anything except Claims 5, 6, and 8, and the Defendants who were actually served, it will not be considered.

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[4]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" See Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant.  See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010).  However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

> B. **There are no genuine issues of material fact that preclude a summary judgment in favor of Defendants.**

Gibson contends he was in lockdown for more than 23 hours per day in DC-III, from June 2013 through August 2014.  Gibson alleges that Lt. Lavalais, Corporal Nichols, Corporal Gintz, and Deputy Cummins repeatedly denied him (as well as other inmates in isolation) one hour per day out of his cell to take a shower, call his family, clean his cell, and walk the hall.  Gibson claims he was sometimes only

---

[4] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

3

allowed out for 15 to 20 minutes. Gibson contends that, when he complained, the response was that it was "not technically a DOC Facility" so they could do whatever they wanted, and that all they needed to do was claim there was a "security risk" going on. Gibson contends the isolation cells are very small, and extended lockdown causes mental instability.

Gibson also contends he denied an opportunity to exercise while he was in lockdown in DC III because he was not allowed out of his cell. Gibson is diabetic. Because of the prolonged period without exercise, Gibson claims he has severely weakened muscles and bones, an increased likelihood of ailment and disease, poor nutrition absorption, a weak heart, weak blood circulation, mental depression, and mental fatigue. Gibson contends that, when he was eventually allowed to exercise, he was too weak to do so.

Warden Dauzat states in an affidavit (Doc. 44-4) that Gibson was charged with sexual battery, carnal knowledge of a juvenile, and indecent behavior with a juvenile; he was released to home confinement; additional charges were filed for molestation of a juvenile, sexual battery and forcible rape; and Gibson was booked into DC-I again. Warden Dauzat discovered that, from May 25, 2013 to June 21, 2013, Gibson had made multiple plans to escape, had conspired and gathered materials to facilitate the escape, and had conspired to obstruct justice through an attempt by family members to influence the testimony of witnesses (Doc. 44-4). Warden Dauzat then put Gibson on suicide watch at DC-I, and at different times, a restraint chair was used (Doc. 44-4). When Gibson was given a mattress again, he tore it open and laid

inside it, so it was removed again (Doc. 44-4). Gibson was hospitalized for a suicide attempt on May 25, 2013, then again attempted suicide after returning from the hospital on May 25, 2013, and again on May 27, 2013 (Doc. 44-4). Warden Dauzat instructed that Gibson be shackled with belt and leg irons whenever he was out of his cell because he was an escape risk, and he had to be restrained and escorted by two or more deputies whenever he was moved (Doc. 44-4). On June 21, 2013, Gibson was again found collecting materials with which to escape, and he again attempted suicide on June 23, 2013 (by hanging himself with his gown) (Doc. 44-4). On June 23, 2013, Gibson was moved to DC-III for better supervision, and was returned to DC-I on August 24, 2014 (Doc. 44-4).

Warden Dauzat further states in his affidavit (Doc. 44-4) that, because of Gibson's extensive history during his incarceration in RPDC, he was placed in isolation from January 6, 2015 to July 6, 2015. Gibson was convicted on August 28, 2015. Warden Dauzat states he does not have any record or recollection of assigning Gibson to protective custody. Apparently, Gibson was placed in isolation due to his escape and suicide attempts.

In his deposition, Gibson states he is currently on probation, and is working and residing in North Carolina (Doc. 44-3, p. 2/25). Gibson states that, when he was in RPDC the first time, he was in the general population dorm, Dorm 582, for non-violent criminals, and that he has no complaints about that period of incarceration (Doc. 44-3, p. 7/25).

5

Gibson said that, when he was returned to the detention facility, he was denied out-of-cell exercise (Doc. 44-3, pp. 7-8/25). Gibson contends he complained to everybody, his sister called the Sheriff's office, and Gibson wrote grievances (Doc. 44-3, p. 8/25). Gibson contends he was supposed to be allowed out of his cell for an out each day, but that the guards often let him out for only 20 minutes because they were too busy (Doc. 443, p. 19/25). Gibson alleges his cell was too small for adequate exercise (Doc. 33-2, p. 19/25).

Gibson contends when he was returned to prison, he went to Dorm 582, but asked to be moved because he had problems with another inmate in the dorm (Doc. 44-3, p. 9/25). Gibson contends that, in his new dorm, the guards handed out pills "like candy to the whole jail," then they pills were traded (Doc. 44-3, p. 10/25). Gibson contends he traded for some pills that would help him sleep, but which made him delirious, and he tried to kill himself (Doc. 44-3, p. 10/25). After his suicide attempt, Gibson was moved to Dorm 510 and placed in an observation cell (Doc. 44-3, p. 10/25). When Gibson complained about not receiving his legal mail in Dorm 510, Gibson was moved to Dorm 508, which held pretrial detainees accused of violent crimes (Doc. 44-3, p. 14/25). Gibson contends he was moved to Dorm 508 by Bishop, Dauzat, Snow, and Mitchell, in retaliation for complaining about not receiving his legal mail (and because he championed the other inmates who were not receiving their mail, either) (Doc. 44-3, pp. 14-15/25). Gibson contends his food was frequently taken from him by other inmates; the back of his head was cut when he was hit in the head by an inmate with a tray; and his commissary items were often stolen (Doc. 44-3, pp. 14-

6

16/25). Gibson further states that: Gintz constantly refused him exercise outside his cell (and wrote Gibson up for having contraband in his cell); Lavalais refused to let Gibson exercise outside his cell; Nichols did not let Gibson exercise; and some of the inmates in Dorm 508 said Turner had told them that Gibson was a snitch and a rapist (Doc. 44-3, pp. 17-20/25).

Gibson was classified as a pretrial detainee at the time he arrived at the RPDC. See Bell v. Wolfish, 441 U.S. 520, 523 (1979) (a pretrial detainee is a person who has been charged with a crime but has not yet been tried). As such, he was presumed innocent and could not be "punished." Bell, 441 U.S. at 535 (pretrial detainees are protected under the Due Process Clause of the Fourteenth Amendment which requires that they not be punished). Id. at 537 n. 16. In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, the proper inquiry is whether those conditions amount to punishment of the detainee. Id. at 535. For a pretrial detainee, the standard to apply in analyzing a constitutional claim depends on whether the claim is classified as a challenge to conditions of confinement or an "episodic act or omission." Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997).

> 1. **Defendants' motion for summary judgment should be granted as to Gibson's claim that he was not allowed out of his isolation cell for a full hour each day and was denied an opportunity to exercise outside his cell.**

In this case, Gibson's claims of being deprived of an opportunity to leave his cell for a full hour each day and to exercise outside his cell are clearly more than

episodic acts or omissions, and amount to claims of unconstitutional conditions of confinement.

A conditions of confinement case is an attack on "general conditions, practices, rules, or restrictions of pretrial confinement." Scott, 114 F.3d at 53. In that instance, a constitutional violation exists only if the condition is not reasonably related to a legitimate, non-punitive governmental objective. Id.; see also Serton v. Sollie, No. 02-61010, 2003 WL 22849840, at *2 (5th Cir. 2003) (citing Hare v. City of Corinth, 74 F.3d 633, 640 (5th Cir. 1996)). Gibson is attacking the conditions of his pretrial confinement. As such, a constitutional violation exists only if the condition is not reasonably related to a legitimate, non-punitive governmental objective. Scott, 114 F.3d at 53.

Gibson contends he was confined in his cell in lockdown for more than 23 hours per day, for 14 months.[5] Gibson contends Defendants often let him out of his cell for only 20 minutes, instead of a full hour, because they were too busy to allow him to have a full hour. Gibson contends he was deprived of an opportunity to exercise outside of his cell, which caused health problems.

Placement in extended lockdown, without a loss of good time, is not an atypical, significant deprivation in which an inmate has a constitutionally protected liberty interest. See Toppins v. Day, 73 Fed. Appx. 84, *6 (5th Cir. 2003) (citing Sandin v. Connor, 515 U.S. 472, 486-87 (1995)); see also Donaldson v. Ducote, 112 Fed.Appx. 329, 331-32 (5th Cir. 2004). Defendants compare Gibson's case to Umondak v. Ginsel,

---

[5] Defendants misapprehend Gibson's argument to be confinement in his cell for 23 hours per day.

8

426 Fed.Appx. 267, 269 (5th Cir. 2012), in which the Fifth Circuit held that, where a transient inmate was denied out-of-cell recreation for 25 days, there was no due process violation. The prison had a policy that transient-status prisoners were not allowed out of their cells for recreation. That case is not comparable to Gibson's case, since Gibson was a long-term pretrial detainee in the RPDC.

Defendants also cite Haralson v. Campuzano, 356 Fed.Appx. 692, 697 (5th Cir. 2009), in which the Fifth Circuit found no Eighth Amendment violation where an inmate did not demonstrate a "serious illness or injury" from being confined in his infirmary cell for seven months for medical treatment. Again, that case is hardly comparable to Gibson's, since Haralson was confined for medical treatment and was a convicted prisoner.

A more comparable case is Hernandez v. Velasquez, 522 F.3d 556, 558 (5th Cir. 2008), in which the Fifth Circuit reviewed a convicted prisoner's 13-month stay in lockdown without out-of-cell exercise due to a gang war. The Fifth Circuit found no evidence that Hernandez suffered impaired health, so there was no Eighth Amendment violation.

In the case at bar, Defendants show, through the deposition of Warden Dauzat, that Gibson was held in isolation because he was both a suicide risk and an escape risk. Therefore, Defendants have demonstrated a non-punitive reason for keeping Gibson in isolation for 14 months.

Gibson alleges health problems resulting from the lack of an opportunity to exercise outside of his cell. However, Gibson has not presented any medical evidence

9

to support his claim. Although this Court has recently been made aware that medical records are not (or were not during the time complained of in this suit) kept by the Rapides Parish Detention Center,[6] Gibson was released from the RPDC (because he was sentenced to probation) and the Court was notified of that change on September 10 & 14, 2015 (Docs. 19 & 20). Gibson has not provided any medical records since his release to support his claim of health problems that developed due to his confinement in extended lockdown in the RPDC.

Since Gibson has not shown he suffered any health issues due to his extended confinement in lockdown without an opportunity to exercise outside of his cell, there are no genuine issues of material fact that would preclude a summary judgment. Therefore, Defendants' motion for summary judgment on Gibson's claim of lack of exercise should be granted.

### 2. Defendants' motion for summary judgment should be granted as to Gibson's claim that Defendants' failed to protect him while he was confined in the RPDC.

Gibson contends Corporal Mitchell, Deputy Snow, Warden Dauzat, Deputy Bishop, and Deputy Turner failed to protect him from an assault by another inmate and from having his food taken from him while he was confined in Dorm 508, in DC-I, in late September 2014. Gibson contends his meals were stolen numerous times, he had psychological stress, and he was assaulted. Gibson contends his head was split open and required staples. Gibson alleges that Defendants knew there was a

---

[6] See Hauenstein v. Hilton, No. 1:14-cv-3188 (W.D.La.).

substantial risk that he would be seriously harmed when they placed him in the dorm for detainees accused of violent crimes.

Where the harm complained of by a pretrial detainee is a particular act of omission of one of more officials, the action is characterized properly as an episodic act or omission. Scott, 114 F.3d at 53. For a discrete, episodic act, the detainee must establish only that the constitutional violation complained of was done with subjective deliberate indifference to his constitutional rights. Once the detainee has met this burden, he has proved a violation of his rights under the Due Process clause. Scott, 114 F.3d at 54. The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 836 (1994).

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. See id. at 836. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. See id. at 837.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.  See id. at 841.  A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  See id. at 842.  It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety.  See id. at 844; see also Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008).  The failure of a prisoner to give any advance notice to prison officials of potential danger to the prisoner's safety is not dispositive of the issue of the official's awareness, see Farmer, 511 U.S. at 848, nor is advance notice of a substantial risk of assault posed by a particular fellow prisoner a prerequisite, see id. at 849.

In Mosely v. Anderson, 503 Fed.Appx. 272, 274 (5th Cir. 2012), cert. den., 133 S.Ct. 2031 (U.S. 2013), the Fifth Circuit found the plaintiff had proffered no specific allegations that established the defendants knew of and disregarded a risk to his safety by orchestrating his removal from segregation and his placement in a cell where he could be exposed to an anticipated attack by a violent inmate.  Mosely failed to allege any particular facts establishing that the defendants knew the violent inmate presented a risk of serious harm and purposefully exposed Mosley to that risk.  The Court found Mosley's speculative assertions did not sufficiently demonstrate that the defendants had adequate information to draw an inference that Mosley faced a substantial risk of attack from the inmate, or that they ignored or exposed Mosley to that risk.  See id. at 274.

As in <u>Mosely</u>, Gibson has not alleged specific facts to show that each named Defendant knew Gibson was likely to be attacked and/or have his food stolen while he was in Dorm 508, and intentionally exposed Gibson to those risks. Gibson only alleges that Defendants "knew there was a substantial risk he would be seriously harmed" and failed to protect him. Gibson has not alleged why or how Defendants knew he was likely to be harmed. Gibson does not even allege that he informed the guards his food was being stolen.

Gibson has failed to allege specific facts to show that Defendants actually knew he was exposed to such risks and needed protection. Because Gibson did not file a response to Defendants' motion, Gibson did not support his claim with any summary judgment-type evidence.

Since Gibson has not shown that Defendants were deliberately indifferent to his safety and failed to protect him from known risks of harm, Defendants' motion for summary judgment should be granted on Gibson's failure to protect claim.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Gibson's claims against Sheriff William Earl Hilton, Deputy Fairbanks, Deputy Carmouche, Deputy Greene, Sgt. Brandly, Deputy Hunter, and Sgt. Dempsey be DISMISSED WITHOUT PREJUDICE pursuant to Fed.R.Civ.P. 4(m).

IT IS ALSO RECOMMENDED that Defendants' motion for summary judgment be GRANTED and that Gibson's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __10th__ day of December, 2016.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge